Tannehill, J.
This cause is presented on an agreed statement of facts, which agreement discloses that P. L. Swackhammer during his life time was the owner of five shares of the capital stock of the Roseville State Bank, and the owner of a deposit account in said bank of $1596.41. Swackhammer died intestate April 25, 1930, leaving Edna L., his widow and Ralph, age seven years, his only child and next of kin. *101 The widow was appointed administratrix of said estate, May 6, 1930. Appraisement of said estate was made and the same filed in Probate Court May 12, 1930. Under Section 10,654, General Code, the widow had set off to her $500, and under Section 10,656, General Code, for her year’s support as widow, $1500, and for the support of said child, $500. On February 24, 1931, the defendant took charge of said bank in liquidation, and on September 30, 1931, and March 18, 1932, paid dividends to said administratrix on said deposit amounting to $789.20. October 24, 1932, defendant made demand by formal presentation upon said administratrix for payment of double liability on said stock owned by said estate; payment to be made by December 15, 1932; which claim was, on October 29, 1932, rejected by said administratrix. On May 10, 1933, defendant declared a further dividend of 12% %; which amounted on said deposit to $199.55, an which amount was withheld under and by virtue of Section 710-98, General Code. The estate was appraised at $3788.66. Preferred claims of $1428.53 have been allowed and paid. Plaintiff prays that her statutory allowance and the yearly allowance to her and her son be made the first and best lien against the remaining funds, in the sum of $798.21, and that defendant be ordered to pay plaintiff the said dividend of 12%%, amounting to $199.55, and future dividends.
The question involved in this case is, whether or not the defendant is entitled to a setoff, arising under Article 13, Section 3, Ohio Constitution, and Section 710-75, General Code, known as the “Double Liability Law” against deposits in the same bank where the stock is held, under Section 11,319, and if not under Section 11,319, then under the kindred statute, Section 11,321, which provides for the cancellation of deposits pro tanto where there are cross demands.
*102 That there was a contractual liability on the part of Swackhammer when he purchased the stock to pay further to the extent of the face value of his stock in the case of insolvency, as claimed by the defendant, can hardly be supported by the authorities cited by defendant, and the case of Pugh v. Conklin, 38 O. L. R. 14, 44 O. A., 272, is, I think, decisive of this question, as no cause of action existed against Swackhammer at the time of his death.
“No cause of action or demand existed against the intestate, at his death. A liability only was incurred, upon which, on the contingency of the security being compelled to pay for the intestate, he would have a right of action for his indemnity. A bare possibility, that in a certain future contingent event, he would have a demand, is not a debt due from the intestate, and such claim has not the mutuality required for a setoff. Such a demand, though good against the estate, can only look to the general assets for satisfaction.”
Then as to the cross demands, under Section 11,321, General Code, the facts show that on the 12th day of May, 1930, the report of the appraisers of the Swackhammer estate allowed the widow and son, under Sections 10,654 and 10,656, General Code, the sum of $2500. This allowance was made long before the bank was found to be insolvent. Such allowance remains undisturbed and is therefore effective from its date and the order of its priority thus became fixed. At that time, and for months after-wards, the bank had no claim against Swackhammer. He had the undisputed right to demand and collect the $1596.41 deposit, and his administratrix, for the protection of the creditors of the estate, had the same right. Swackhammer owed nothing at his death. Nothing could ^happen to his estate after his death to change the relation of his creditors thereto. The rights of all the creditors were then fixed.
*103 “The moment that Black, (the intestate), died all his creditors had an equal right to a pro rata dividend of his property, upon which no liens existed; and it would be entirely inadmissible to hold that one creditor could get property into his hands belonging to the estate, and thus indirectly by an offset obtain'the full payment of his debts, while others might receive but a part, or nothing at all. No right of offset existed in this case at the death of Black, and none could be acquired afterward by a seizure upon the assets of the estate.” McDonald v. Admr. of Black, 20 Ohio, 185, at page 196.
To hold otherwise, I think would be in violation of this rule as laid down by the Supreme Court and that other common law rule upon which the above decision is founded.
The right of creditors of a decedent attach and become a lien or liens on his property the moment life leaves him, and they must then be determined from the then existing conditions, and no general creditor has the right by force of circumstances which arise more than eight months after-wards to change the order of payment or distribution. Such a change would operate as a fraud against other creditors. Granger, Admr., v. Granger, 6 Ohio 35, McDonald v. Black, supra.
Would not the same rights apply to the allowance to the widow and minor son?
“With the construction we adopt, the rights and duties of all concerned are clear, definite and fixed. It gives to the widow and children a paramount claim upon enough of the estate to support them for one year, over creditors and distributees; and where it has been fixed or set apart by the appraisers, or by the court on review, effectually withdraws it from the balance of the estate, and has all the force and effect of an adjudication in their favor. It confers a vested right of property, conclusively disposes of so much of the estate, and leaves no discretion to the *104 administrator as to complying with it, an d no responsibility upon him, to creditors or distributees, for thus complying. In the language of the statute, it is “set off” from the estate, and “allowed” to the widow and children.” Dorah’s Admr. v. Dorah’s Executor, 4 O. S., 292, at page 296; Bane v. Wick, 14 O. S., 505, at p. 513.
While the cases last cited were actions to recover the unpaid portions of an allowance by the appraisers to the widow, yet, in my opinion, they fix the status of the claim in the second class of creditors as distinguished from the third class or general creditors, and the right of the widow and son thereto can not be altered by conditions which arise through subsequent acts of the parties or by operation of law.
I think that Pugh v. Conklin, supra, is directly in point.
In view of the above authorities as applied to the agreed statement of facts, it is the judgment of the court that the year’s allowance set off by the appraisers to the widow and minor child above mentioned is the first and best lien against the remaining funds in the Roseville State Bank, and that the plaintiff as administratrix is entitled to the 12^/2 % ordered, to-wit, $199.55, and all future dividends.